IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PTS CONSULTING SERVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21-cv-02141 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| TCODE INC., | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

Plaintiff PTS Consulting Services LLC ("PTS")[1] was a consultant on a major information technology project that required specialized computer programming services. To provide those services, PTS contracted with another consulting company, Defendant Tcode Inc. ("Tcode"). Before the project's completion, a payment dispute arose between PTS and Tcode that resulted in the early termination of their business relationship. The parties' dispute also gave rise to litigation, including this action. Because Tcode claims that this lawsuit is frivolous, it now moves to dismiss PTS's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 36), and also seeks for an award of sanctions against PTS and its former counsel, Intervenor Stacey Lynch (Dkt. No. 33). For the reasons that follow, Tcode's motions are denied.

## BACKGROUND

The Court begins by summarizing the operative amended complaint's allegations. Then, the Court will provide an overview of the case's procedural history, as it is relevant to both the motion to dismiss and the motion for sanctions.

---

[1] PTS was identified in the original complaint as PNC Capital LLC doing business as ProcureTechStaff Consulting Services, but it refers to itself as PTS Consulting Services LLC in the amended complaint.

I.  **Amended Complaint's Allegations**

This case arises out of a dispute between PTS, a company that provides professional consulting services to businesses and other consulting firms, and Tcode, a company that provides information technology ("IT") consulting services, including specialized computer programming services. (Am. Compl. ¶¶ 1–2, 6, 15, Dkt. No. 30.) The amended complaint alleges as follows.

PTS was retained to consult on a major IT project by Walgreens Co. ("Walgreens"). (*Id.* ¶ 7.) For assistance on the Walgreens project, PTS contracted with Nityo Infotech Corporation ("Nityo"), and Nityo in turn contracted with another technology consulting firm, Tata Consulting Services ("TCS"), to work on the project. (*Id.* ¶ 8.) Because PTS also needed specialized computer programming services to complete the Walgreens project, it hired Tcode as a consultant, and the two parties entered into a subcontractor agreement. (*Id.* ¶¶ 9–11.)

Tcode began working on the Walgreens project in May 2019. (*Id.* ¶ 15.) In April 2020, however, a payment dispute arose between PTS and Tcode. (*Id.*) In particular, Tcode believed that PTS was breaching the subcontractor agreement by failing to pay Tcode's invoices in a timely manner. (*Id.* ¶¶ 17, 19.) In connection with the payment dispute, Tcode's co-president sent an email on April 14, 2020 to Nityo and TCS that accused PTS of embezzlement. (*Id.* ¶ 17.) The next day, Tcode's co-president sent another email to Nityo and TCS again accusing PTS of embezzling money. (*Id.* ¶ 18.) Tcode's accusations of embezzlement were false, and the reason that Tcode was not paid was because it had not properly entered into PTS's account system its time worked on the Walgreens project. (*Id.* ¶ 19.) Ultimately, Tcode terminated its subcontractor agreement with PTS on April 30, 2020. (*Id.* ¶ 15.)

## II. Procedural History

On May 14, 2020, Tcode initiated arbitration regarding its payment dispute with PTS. (*Id.* ¶ 22.) PTS then asserted counterclaims against Tcode in the arbitration for, among other things, defamation based on Tcode's false accusations of embezzlement against PTS, breach of contract, and tortious interference with contract. (*Id.* ¶ 23.) After Tcode challenged the arbitration panel's jurisdiction over PTS's defamation counterclaims, PTS agreed to dismiss those counterclaims voluntarily on July 14, 2020. (*Id.* ¶¶ 24–25.) Despite the counterclaims for breach of contract and tortious interference remaining in arbitration, on September 4, 2020, PTS filed an action in Illinois state court that asserted those same breach of contract and tortious interference claims. (Am. Compl. ¶ 26; Compl., Dkt. No. 1-1; Def.'s Am. Mot. for Sanctions ¶ 5, Dkt. No. 33.)

Believing the state-court action to be entirely improper, but wishing to preserve its right to remove the case to federal court on the basis of diversity jurisdiction, Tcode requested that PTS provide it with jurisdictional information bearing on the grounds for removal. (Def.'s Am. Mot. for Sanctions ¶¶ 7–8.) Following PTS's refusal to provide Tcode with the requested information voluntarily, Tcode filed a motion to compel jurisdictional discovery in state court. (Def.'s Am. Mot. for Sanctions ¶ 9; Def.'s Am. Mot. for Sanctions, Ex. 5, Dkt. No. 33-5.) In its response to the motion to compel, PTS asserted that jurisdictional discovery was not warranted because the parties had agreed to the exclusive jurisdiction of the state court with respect to the defamation counterclaims dismissed from the arbitration. (Def.'s Am. Mot. for Sanctions ¶ 10; Def.'s Am. Mot. for Sanctions, Ex. 6, Dkt. No. 33-6.) As evidence of that agreement, PTS pointed to an email between its then-counsel, Intervenor Stacey Lynch, and Tcode's counsel in the arbitration proceeding. (Def.'s Am. Mot. for Sanctions, Ex. 6.) In the email, Lynch states that her email "will confirm the agreement we reached earlier in this week that the portions of my clients [*sic*]

3

counterclaim that I agreed to dismiss in [arbitration] will be filed in Cook County." (*Id.*) In response, Tcode's arbitration counsel reminded Lynch that he had "not been retained and will not be representing [Tcode] in state court if/when you file there" and further stated that he would let Tcode know that PTS intended on filing an action in state court. (*Id.*)

Ultimately, the state court granted Tcode's motion to compel jurisdictional discovery. (Def.'s Am. Mot. for Sanctions, Ex. 8, Dkt. No. 33-8.) In its ruling, the state court explained that it was making "no findings as to the existence and scope of the alleged [jurisdictional] agreement" but observed that "it does not appear from the email chain on which plaintiff relies that defendant's former counsel agreed to exclusive jurisdiction in state court or to waive defendant's right to remove the instant claims to federal court." (*Id.* at 2.) Upon confirming the existence of diversity jurisdiction, Tcode removed the action to this Court on April 21, 2021. (Notice of Removal, Dkt. No. 1.) Shortly after removal, PTS—still represented by Lynch—moved to remand the case back to state court, again claiming that the parties had agreed to that court's exclusive jurisdiction over the defamation counterclaims dismissed from their arbitration. (Pl.'s Mot. to Remand ¶¶ 2–4, Dkt. No. 11.) In its response to the motion to remand, Tcode denied the existence of any agreement to exclusive state-court jurisdiction and further noted that the claims set forth in PTS's complaint were not, in fact, the defamation claims supposedly subject to the state court's exclusive jurisdiction but instead were the same breach of contract and tortious interference claims that were already pending in arbitration. (Def.'s Opp'n to Pl.'s Mot. to Remand at 1–2, Dkt. No. 15.) After the motion to remand was fully briefed, Tcode filed its original motion for sanctions against PTS and Lynch, claiming that they filed a frivolous lawsuit, a frivolous motion to remand, and knowingly made misrepresentations to the Court. (Dkt. No. 22.)

As a result of Tcode's motion for sanctions, Lynch moved to withdraw as PTS's counsel. (Dkt. No. 23.) This Court granted Lynch's motion but gave her leave to file an appearance as an Intervenor for purposes of addressing Tcode's request that she be sanctioned. (Dkt. No. 27.) Meanwhile, PTS retained new counsel, who withdrew its motion for remand and subsequently filed the operative amended complaint on September 24, 2021. (Dkt. No. 30.) The amended complaint drops the breach of contract and tortious interference claims that were in the original complaint, and instead asserts two defamation claims based on Tcode's statements in the April 14, 2020 and April 15, 2020 emails to Nityo and TCS accusing PTS of embezzlement. (Am. Compl. ¶¶ 29–42.) According to PTS, it always intended to assert the defamation claims in this action, but when Lynch filed the original complaint in state court, she mistakenly asserted the breach of contract and tortious interference claims that remained pending in arbitration. (Pl.'s Opp'n to Def.'s Am. Mot. for Sanctions, Ex. 1, Chaudhuri Decl. ¶ 9, Dkt. No. 40-1.) PTS denies having any knowledge of Lynch's mistake until its new counsel informed it of Lynch's error. (*Id.*) Nonetheless, Tcode maintains that both PTS and Lynch engaged in sanctionable conduct and further claims that PTS's amended complaint is just a continuation of its harassing and vexatious conduct in this action. Therefore, Tcode has amended its earlier motion for sanctions to reflect events subsequent to the original filing. (Dkt. No. 33.) Thus, presently pending before the Court are Tcode's amended motion for sanctions and its Rule 12(b)(6) motion to dismiss.

## DISCUSSION

Because Tcode's motion for sanctions is predicated in part on the amended complaint's lack of merit, the Court begins by addressing the motion to dismiss before turning to the motion for sanctions.

I. **Motion to Dismiss**

To survive a motion under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Tcode contends that the defamation claims asserted in PTS's amended complaint are plainly time-barred and therefore frivolous. Normally, a plaintiff's complaint need not anticipate an affirmative defense such as the statute of limitations to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). It is therefore "irregular to dismiss a claim as untimely under Rule 12(b)(6)." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (internal quotation marks omitted). Dismissal on statute of limitations grounds at the pleading stage may be warranted, however, when a plaintiff pleads facts that effectively establish the defense. *Id*. Here, PTS's defamation claims are based on statements made by Tcode in emails accusing PTS of embezzlement dated April 14, 2020 and April 15, 2020. Because Illinois's statute of limitations for defamation claims is one year, *see* 735 ILCS 5/13-201, and PTS filed its amended complaint on September 24, 2021, Tcode contends that the amended complaint's allegations fully establish that the defamation claims are untimely. For its part, PTS concedes that its amended complaint was filed outside the one-year limitations period but asserts that the

6

defamation claims relate back to its original complaint, which was filed within the applicable limitations period on September 4, 2020.

Under Federal Rule of Civil Procedure 15(c)(1)(B), an amended complaint relates back to the original complaint where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Although the Seventh Circuit has not squarely decided whether the relation-back analysis is governed by federal or state law in diversity cases, it has observed that "Illinois's relation-back rule is identical to the federal rule." *Kreher v. Polaris Indus., Inc.*, No. 20-cv-126-DWD, 2021 WL 5299086, at *2 (S.D. Ill. Nov. 15, 2021) (quoting *Springman v. AIG Mktg., Inc.*, 523 F.3d 685, 688 (7th Cir. 2008)). Thus, "courts sitting in diversity over Illinois state law claims apply both Seventh Circuit and Illinois precedent in assessing whether an amended complaint relates back to an earlier complaint." *Id.* Further, "the Notes of the Advisory Committee on Rules for the 1991 Amendment to Rule 15 state that if the state law which governs the limitations period 'affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim.'" *Forsythe v. Advoc. Health & Hosps. Corp.*, No. 11 C 7676, 2013 WL 427130, at *3 (N.D. Ill. Feb. 1, 2013).

The relation-back inquiry under both federal and Illinois law allows an amendment to relate back "when it arises out of the same transaction or occurrence set up in the original pleading." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 515 (7th Cir. 2011) (internal quotation marks omitted). Ultimately, the inquiry focuses on "whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one." *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 741 (7th Cir. 2018)

(internal quotation marks omitted). "Even 'significant' changes to a complaint . . . can relate back so long as the defendant had fair notice of the substance of the new allegations from the outset." *Id.* Further, in undertaking the inquiry, the Illinois Supreme Court has explained that the purpose of its relation-back doctrine "is to preserve causes of action against loss by reason of technical default unrelated to the merits," and therefore has emphasized that courts should "avoid elevating questions of form over substance." *Lawler v. Univ. of Chi. Med. Ctr.*, 104 N.E.3d 1090, 1096 (Ill. 2017).

Both federal and Illinois law recognize that relation back will be "appropriate where a party seeks to add a new theory to a set of previously alleged facts" and inappropriate where the amended pleading "states an entirely new and distinct claim for relief based on completely different facts." *Porter v. Decatur Mem'l Hosp.*, 882 N.E.2d 583, 592 (Ill. 2008). Nonetheless, "[b]etween these two clear principles . . . is a grey area where courts have allowed relation back when amendments have added new factual allegations that can be characterized as falling within the general 'transaction' alleged in the original complaint." *Id.* In such circumstances, the Illinois Supreme Court instructs that new factual allegations in an amended pleading will relate back "where there is a 'sufficiently close relationship' between the original and new claims, both in temporal proximity and in the general character of the sets of factual allegations and where the facts are all part of the events leading up to the originally alleged injury." *Id.* (quoting *In re Olympia Brewing Co. Sec. Litig.*, 612 F. Supp. 1370, 1372–73 (N.D. Ill. 1985)).

Here, PTS's amended complaint replaces the original complaint's breach of contract and tortious interference claims with defamation claims and adds a host of new factual allegations. Although the original complaint contained sparse factual details, it broadly alleged that Tcode breached its subcontractor agreement with PTS by attempting to work with Nityo and TCS

directly, which caused PTS lost business and revenues. (Compl. ¶¶ 6–26.) The amended complaint provides substantially more factual detail, alleging that a payment dispute arose between PTS and Tcode, and in the course of the dispute Tcode defamed PTS with statements in emails sent to Nityo and TCS accusing PTS of embezzlement, which caused PTS to lose future business with Nityo and TCS. (Am. Compl. ¶¶ 15–21.) At a high level, both the original complaint and the amended complaint are based on the same general transaction or occurrence—namely, the dissolution of PTS and Tcode's business relationship. It can be inferred from that commonality that the new defamation claims are temporally proximate to the abandoned breach of contract and tortious interference claims. Further, PTS alleges in both pleadings that it was injured by its resulting loss of business with Nityo and TCS.

      The commonality of the general character of the facts alleged in the original complaint and those alleged in the amended complaint presents a more difficult question, largely owing to the original complaint's lack of factual detail. But the original complaint does allege that Tcode "[s]ent emails to Nityo . . . in an attempt to get Nityo . . . to put pressure on PTS to work with PTS directly, essentially attempting to cut PTS out of the deal entirely" and "sent emails to agents and employees of Nityo . . . attempting to circumvent PTS." (Compl. ¶ 24.) Those emails allegedly were successful in inducing Nityo to breach its contract with PTS and allowed Tcode to work directly with TCS. (*Id.* ¶¶ 18, 25.) The original complaint's reference to emails that poisoned PTS's relationship with Nityo and TCS likely encompass the April 14 and April 15, 2020 emails containing the alleged defamatory statements accusing PTS of embezzlement. *See In re Olympia Brewing Co.*, 612 F. Supp. at 1373 ("[S]ufficient notice of the new claim is arguably present where the original claim and the amendment involve at least substantially overlapping occurrences." (internal quotation marks omitted)). Similarly, Tcode's breaches of contract and

9

tortious interference with contract as alleged in the original complaint could have been accomplished by way of defamatory statements. Still, notably absent from the original complaint is any allegation that Tcode's emails contained false statements or accusations necessary for the defamation claims.

Based on a comparison of the amended complaint and the original complaint, the relation-back question here is a close call. Yet when the Court considers the case's procedural history, it becomes apparent that Tcode had learned enough information prior to the expiration of the statute of limitations to know that PTS intended to assert defamation claims in its original complaint. Contrary to Tcode's contention that the relation-back analysis must be confined to the four corners of the relevant pleadings, the Court finds it proper to "consider the entire record, including depositions and exhibits" in determining whether Tcode had fair notice of the defamation claims. *Porter*, 882 N.E.2d at 591; *see also Hage v. Kossier*, 109 N.E.3d 924, 928 (Ill. App. Ct. 2018) ("In determining whether an amendment relates back to the original pleading . . . a court should consider the entire record to establish, whether before the limitations period expired, the defendant was put on clear notice of the occurrence alleged.").[2]

As discussed above, the amended complaint's defamation claims were originally brought by PTS as counterclaims in the arbitration initiated by Tcode, along with the breach of contract and tortious interference claims that were asserted in the original complaint in this litigation. One of the defamation counterclaims alleged that Tcode defamed PTS in emails to PTS's clients, including Nityo, by falsely accusing PTS of "committing crimes, including fraud and embezzlement." (Def.'s Am. Mot. for Sanctions, Ex. 2, Arbitration Countercls. ¶¶ 12–15, Dkt.

---

[2] Mindful of the fact that it is considering the relation-back issue on a motion to dismiss, the Court notes that all documents outside the complaint that it considers in its analysis relate to prior proceedings in this litigation, save for the arbitration counterclaims, which are incorporated into the amended complaint by reference (*see* Am. Compl. ¶¶ 22–28).

No. 33-2.) Thus, the arbitration counterclaims gave Tcode notice of PTS's defamation claims based on Tcode's false accusations of embezzlement. While PTS voluntarily dismissed the defamation counterclaims, its then-counsel, Lynch, notified Tcode's former counsel that she intended to refile those dismissed counterclaims in state court. (Def.'s Am. Mot. for Sanctions, Ex. 6.)

Tcode may reasonably have been confused when PTS filed an action in state court bringing not the dismissed defamation counterclaims but the breach of contract and tortious interference claims that remained pending as counterclaims in arbitration. But any confusion should have been dispelled by PTS's response to Tcode's motion to compel jurisdictional discovery. In that response, filed on October 20, 2020, PTS explained that it had an agreement with Tcode to dismiss the defamation counterclaims from arbitration and refile them in state court. (*Id.*) That motion attached as exhibits an email string supposedly evidencing an agreement to the state court's exclusive jurisdiction as to the defamation claims and an affidavit from Lynch clearly demonstrating that she intended to bring the claims dismissed from arbitration in state court. (*Id.*) At this point, Tcode should have known that something was amiss, given that PTS was arguing that the state court had exclusive jurisdiction over claims different from those actually asserted in the original complaint. Yet in its reply in support of its motion to compel jurisdictional discovery, Tcode told the state court that the "former arbitration counterclaims" were "the claims in this action." (Def.'s Am. Mot. for Sanctions, Ex. 7, Dkt. No. 33-7.)

After Tcode removed the case to this Court, PTS moved to remand it—again arguing that the state court had exclusive jurisdiction over the claims. As with its response to the motion to compel jurisdictional discovery, PTS argued that there was an agreement that the counterclaims dismissed from arbitration would be heard exclusively by the state court. Again, PTS's arguments

11

and exhibits made clear that the purported agreement related to the defamation claims rather than the breach of contract and tortious interference claims actually set forth in the original complaint. But this time, Tcode recognized that "PTS did not re-file the claims that were voluntarily dismissed in the Arbitration Proceeding" and further observed, with emphasis, that "*PTS filed the exact same claims that are still pending in the Arbitration Proceeding*." (Def.'s Opp'n to Pl.'s Mot. to Remand at 2.) That appears to be the first time Tcode raised the issue. Notably, it did so in a filing submitted on May 26, 2021—after the statute of limitations on the defamation claims had run.

      Relation back under Rule 15(c) is proper where the amendment asserts a claim that arose out of either the transaction or occurrence set out in the original complaint or the conduct **"attempted to be set out."** Fed. R. Civ. P. 15(c)(1)(B) (emphasis added). At least by the time PTS filed its response to the motion to compel jurisdictional discovery in October 2020, Tcode had notice that PTS had attempted to set out the defamation counterclaims dismissed from arbitration in its original complaint but instead mistakenly asserted claims that remained in arbitration. Again, arguably, the original complaint's allegations did enough to alert Tcode to the possibility that it would eventually have to defend against claims of defamation related to its emails falsely accusing PTS of embezzlement. *See Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 751 (7th Cir. 2005) ("An amendment relates back in Illinois when the original complaint 'furnished to the defendant all the information necessary to prepare a defense to the claim subsequently asserted in the amended complaint.'" (quoting *Boatmen's Nat'l Bank of Belleville v. Direct Lines, Inc.*, 656 N.E.2d 1101, 1107 (Ill. 1995))). But any doubts as to notice are resolved by the fact that, prior to the expiration of the applicable limitations period, PTS made representations in filings in this case that unquestionably demonstrated that this litigation was intended to (and eventually would)

involve the defamation counterclaims dismissed from the arbitration. Consequently, the Court finds that the amended complaint relates back to the original complaint, and Tcode's motion to dismiss the latter as untimely is denied.

**II.      Sanctions**

The Court next turns to Tcode's request that both PTS and its former counsel, Lynch, be sanctioned. According to Tcode, PTS and Lynch should be sanctioned for four reasons: (1) they filed a frivolous lawsuit that asserted the same claims as those pending in arbitration; (2) they filed a frivolous motion to remand; (3) they made misrepresentations to the Court; and (4) they unjustifiably continued their frivolous lawsuit by amending the complaint to set forth plainly time-barred claims for defamation. Given the Court's conclusion that the defamation claims relate back to the timely-filed original complaint, the Court finds that PTS's decision to amend the complaint provides no basis to impose sanctions. Accordingly, the Court will consider only the first three grounds asserted by Tcode.

In moving for sanctions, Tcode relies on Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent power. Rule 11 provides that a court may "sanction an attorney for a pleading or other document that (among other potential transgressions) is presented for an improper purpose or makes factual representations that are without reasonable evidentiary support." *Johnson v. Cherry*, 422 F.3d 540, 548 (7th Cir. 2005). Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."[3] And a court also possesses "the inherent authority

---

[3] PTS correctly notes that, as a represented party, it is not subject sanctions under § 1927; only Lynch may be sanctioned under that statute. *E.g.*, *Murphy v. Richert*, No. 15 CV 8185, 2022 WL 4079457, at *5 (N.D. Ill. Sept. 6, 2022).

to impose sanctions for actions taken 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Johnson*, 422 F.3d at 548–49 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)).

As an initial matter, PTS argues that to the extent that Lynch engaged in conduct worthy of sanctions, it was not itself involved in any misconduct. The first question the Court considers is thus whether Lynch filed a frivolous lawsuit by asserting the same breach of contract and tortious interference claims as those already pending in arbitration. PTS insists that it always intended that this action raise the defamation counterclaims dismissed from arbitration and that Lynch mistakenly set forth the wrong claims in the original complaint. Yet Tcode derides that claim of error as lacking credibility. The Court disagrees. Based on its review of the record, the Court finds it more likely that the original complaint's inclusion of claims that remained pending in the arbitration was a mistake—perhaps resulting from inattentiveness or negligence—rather than a product of bad faith.

In particular, the language used in the original complaint suggests that Lynch simply lifted it from the arbitration counterclaims, as each of the claims for relief are plainly addressed to the arbitration panel, with the claims for relief stating: "WHEREFORE [PTS] respectfully requests that this Honorable Arbitration Panel enter an order in its favor and against Defendant." A comparison of the original complaint in this action with the arbitration counterclaims appears to confirm that Lynch simply copy-and-pasted language from the arbitration counterclaims. (*Compare* Compl., *with* Arbitration Countercls. ¶¶ 5–9, 35–44, 54–58.) It is therefore more than plausible that Lynch carelessly copied the wrong arbitration counterclaims and pasted them into the original complaint.

To the extent Lynch's initial inclusion of the wrong claims in the original complaint was a mistake, Tcode notes that Lynch was notified of her error multiple times and nonetheless failed to amend the complaint. For example, one of the arbitrators sent Lynch an email in November 2020 stating that she "read the complaint that was filed [in state court] as pleading claims that are identical to those remaining in this arbitration and seeking identical relief." (Pl.'s Surreply to Mot. to Remand, Ex. 1 to Ex. A, Dkt. No. 18-1.) And even after Tcode explained in its May 2021 response to PTS's motion to remand that the case involved the exact same claims as those pending in arbitration, Lynch still did not amend the complaint prior to her withdrawal as PTS's counsel in July 2021. Certainly, it is perplexing that Lynch failed to correct her error after she was notified of the issue.[4] Nonetheless, the Court finds it more likely that Lynch's failure to correct her error was part of a pattern of inattention and errors rather than an indicator of bad faith. Indeed, the Court discerns no strategic advantage afforded to PTS as a result of Lynch's inclusion of the wrong claims in the original complaint and subsequent failure to correct her error. Moreover, as Tcode presents no evidence demonstrating that it ever notified Lynch or PTS that the original complaint did not include the dismissed arbitration counterclaims prior to the running of the one-year statute of limitations, the Court is left to wonder whether Tcode's silence was strategic. Tcode may well have been content to allow PTS to proceed under the mistaken impression that the original complaint asserted defamation claims, as the one-year statute of limitations for those claims continued to run.

Further suggesting that Lynch acted by mistake rather than intentionally is the fact that her filings in connection with the state-court motion to compel jurisdictional discovery and the motion to remand clearly evinced her lack of awareness that the original complaint did not contain the

---

[4] Importantly for the claim of sanctions as to PTS itself, nothing in the record suggests that Lynch failed to act to correct the error based on any instruction by her client.

dismissed arbitration counterclaims. Had the evidence of the supposed agreement actually related to the claims brought in the original complaint, it would suggest that Lynch asserted those claims as a vehicle to multiply proceedings unreasonably by way of meritless jurisdictional motions. But absent an error, there is no obvious reason (improper or otherwise) for Lynch to oppose federal jurisdiction on the basis of an agreement concerning claims that were not in the litigation.

Tcode argues that PTS's motion to remand would have been frivolous even if the original complaint asserted the defamation claims because PTS's claim of an agreement regarding exclusive state-court jurisdiction over those claims is factually unsupported and frivolous. Relatedly, Tcode claims that Lynch knowingly misled the Court by claiming the existence of such an agreement. The Court agrees that PTS's argument for remand based on exclusive state-court jurisdiction was weak. The evidence of such an agreement showed only that Lynch sent Tcode's former counsel an email informing him that the counterclaims dismissed from the arbitration would be filed in state court. The email contained no representation that the claims would be heard only in state court or would not be subject to removal. Nor did Tcode's former counsel actually confirm the existence of such an agreement, but instead informed Lynch that he would not be representing Tcode in any potential state-court action and would pass her message along to Tcode. But while PTS's argument for remand was very weak, the Court cannot conclude that it was wholly frivolous. There was at least a thread of factual support for PTS's claim of an agreement. Moreover, the Court does not believe the record supports a conclusion that Lynch knowingly misled the Court by characterizing her representation of PTS's intent to file the dismissed arbitration counterclaims in state court as an agreement to exclusive state-court jurisdiction.

In sum, the Court finds that Lynch's conduct in this action is not worthy of sanctions. Lynch's original complaint may have contained significant mistakes and revealed a lack of care in its preparation, and her arguments against federal-court jurisdiction were very weak. But without more, the Court declines to conclude that Lynch acted in bad faith or with an improper purpose. And because Lynch engaged in no sanctionable conduct, there is also no separate basis for sanctioning PTS. Tcode's amended motion for sanctions is therefore denied.

## CONCLUSION

For the foregoing reasons, Tcode's motion to dismiss (Dkt. No. 36) and amended motion for sanctions (Dkt. No. 33) are both denied.

ENTERED:

Dated: September 22, 2022

Andrea R. Wood
United States District Judge